UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>      v.<br><br>JOSE JONATHAN MANZANO-AVILA,<br><br>              Defendant. | CASE NO. CR26-5223-BHS<br><br>ORDER |

THIS MATTER is before the Court on defendant Jose Manzano-Avila's motion for review of detention order. Dkt. 17.

Manzano-Avila is a Mexican national. On October 30, 2003, the Department of Homeland Security (DHS) encountered Manzano-Avila at the Regional Justice Center in King County, Washington, where he was arrested on local charges. Dkt. 1 at 6. DHS placed him in removal proceedings, and an immigration judge granted Manzano-Avila voluntary departure, in lieu of removal, from the United States to Mexico. *Id.* On November 7, 2003, Manzano-Avila departed the United States to Mexico by foot. *Id.*

ORDER - 1

On July 31, 2007, DHS again placed Manzano-Avila in removal proceedings after encountering him at the Lynnwood City Jail. *Id.* An immigration judge determined that Manzano-Avila was inadmissible and ordered him removed from the United States. *Id.* He was removed on September 8, 2007. *Id.*

On or about December 12, 2023, Manzano-Avila was arrested in Pierce County for reckless driving, driving under the influence, and knowingly possessing a controlled substance *Id.* at 7; Dkt. 12 at 4. Immigrations and Customs Enforcement (ICE) was notified of the arrest through a biometric fingerprint match but did not file any charges. Dkt. 1 at 5. His Pierce County charges remain pending. *Id.* at 8.

On May 2, 2026, the Seattle Police Department arrested Manzano-Avila for attempted theft of a motor vehicle and attempted escape. *Id.* ICE was again notified of his arrest through a fingerprint match. The Government charged Manzano-Avila by complaint with the crime of reentry of a removed alien. *Id.* at 9. He was arrested and later indicted by a grand jury. On May 6, 2026, the Government moved for his detention and Magistrate Judge Theresa Fricke ordered Manzano-Avila detained pending trial, finding that he presented a serious flight risk and a danger to the community. Dkts. 7, 14.

Manzano-Avila moves to revoke detention, arguing that the Government has not met its burden to demonstrate that he "presents a *serious* risk of flight" to justify a detention hearing or that such risk cannot be adequately addressed through conditions of release. Dkt. 17 at 1. He emphasizes that he has lived in this district for many years and despite prior misdemeanor charges, has never fled. *Id.* at 8. He contends that his failures to appear at court hearings do not establish a risk of flight but are instead more consistent

with an individual experiencing instability, including lack of stable housing, inconsistent access to a phone, and the difficulty of managing multiple court dates. *Id.* Manzano-Avila asserts that he has no intention of fleeing and lacks the financial means to leave. *Id.*

The Government responds that Manzano-Avila is applying "an extreme definition of 'serious'" that is unsupported by case law. Dkt. 23 at 6. It argues that, to establish a serious risk of flight, the Government need only "proffer sufficient facts to demonstrate an actual and nonfrivolous, not merely hypothetical or trifling, risk that the defendant will flee." *Id.* (citing 18 U.S.C. § 3142(f)(2)(A)). It contends that, however, that Manzano-Avila presents a serious risk of flight regardless of the precise definition. *Id.* at 8.

The Government points to several facts supporting that conclusion, including Manzano-Avila's recent attempt to escape from law enforcement, nine failures to appear within the past three years, and four outstanding warrants—two of which were issued as recently as December 2025. The Government argues that Manzano-Avila's repeated use of false identities demonstrates "an intent to conceal himself from . . . the supervision of law enforcement." *Id.* at 10.

The Government further argues that he should be detained because he is a danger to others and the community. *Id.* at 12. It relies on Manzano-Avila's history of protection orders entered against him and a recent incident in which his mother called law enforcement to report that he had broken into her home. *Id.* at 13. It emphasizes Manzano-Avila's attempt to escape law enforcement by running away and resisting being handcuffed. *Id.*

ORDER - 3

Pretrial Services also recommends that Manzano-Avila be detained. Dkt. 12. It asserts that he presents a risk of nonappearance based on his history of failing to appear, outstanding warrants, citizenship status in Mexico, unemployment, substance use history, and mental health history. *Id.* at 5. It further asserts that he is "viewed as a risk of danger due to his criminal history." *Id.*

## I.   DISCUSSION

When considering a motion challenging a magistrate judge's detention order, the Court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). The Court must enter its own findings of fact, "whether different from or an adoption of the findings of the magistrate," and render a decision "without deference to the magistrate's ultimate conclusion." *Id*.

The Bail Reform Act mandates release of a defendant pending trial unless the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1); *see United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). This requirement reflects the principle that "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). "Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015).

ORDER - 4

As an initial matter, the Court must determine whether a detention hearing is even proper. In a prosecution for illegal reentry, the Government is entitled to a detention hearing upon request only if it establishes by a preponderance of the evidence[1] that the defendant presents a serious risk of flight or a serious risk of the obstruction of justice. 18 U.S.C. § 3142(f)(2); *see United States v. Subil*, No. 2:23-CR-00030-TL, 2023 WL 3866709, at *4 (W.D. Wash. 2023). A serious risk of flight is not equivalent with a risk of nonappearance. Rather, "serious risk of flight" is a "great risk – beyond average – that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision." *United States v. Figueroa-Alvarez*, 681 F.Supp.3d 1131, 1138 (D. Idaho 2023). In other words, the Government must demonstrate "that it is more likely than not that there is a serious *risk* that the defendant will flee, not that it is more likely than not that the defendant *will* flee." *Id.*

After review of the record, the Court adopts and affirms Judge Fricke's conclusion that Manzano-Avila presents a serious risk of flight. Manzano-Avila's repeated failures to appear in court, combined with his recent attempt to escape from law enforcement, demonstrate a pattern of noncompliance with court orders and legal directives. Although Manzano-Avila argues that his failures to appear occurred in cases involving only misdemeanors, the unlawful reentry charge presently before this Court is not a serious

---

[1] The Ninth Circuit has not identified the standard of proof applicable to this threshold showing. However, the Second Circuit has held that the Government must satisfy the requirement by a preponderance of the evidence, and numerous district courts, including courts within this district, have applied the same standard. *See United States v. Watkins*, 940 F.3d 152, 158 (2d Cir. 2019) (("[T]he Government must establish by a preponderance of the evidence that it is entitled to a detention hearing.").

felony and there is no evidence that his circumstances have changed. Manzano-Avila has a history of using false identities, including false names and birthdates, to presumably avoid detection by law enforcement. It is not enough to argue that Manzano-Avila has never left the district. "Flight" is not limited to leaving the jurisdiction; it also includes intentionally moving within a jurisdiction to avoid court proceedings. *See Figueroa-Alvarez*, 681 F.Supp.3d at 1138. The Court concludes that Manzano-Avila presents a serious risk of flight and a detention hearing is warranted.

Next, the Court must determine whether there are condition or combinations of conditions of release "that will reasonably assure the appearance of [Manzano-Avila] as required and the safety of any other person and the community." 18 U.S.C. 3142(e)(1). The Government bears the burden of showing that he poses a flight risk by a preponderance of the evidence and that he poses a danger to the community by clear and convincing evidence. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). The Court considers four factors to determine whether detention is warranted: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including whether, at the time of the offense, the person was on release pending trial; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). The weight of the evidence against the defendant is the least important of these factors, and the Court may not engage in a pretrial determination of guilt or innocence. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).

ORDER - 6

Here, the Court concludes that no condition or combination of conditions will reasonably assure his appearance or the safety of the community. Much of the evidence demonstrating that Manzano-Avila presents a serious risk of flight also supports the conclusion that no condition will reasonably assure his appearance. Manzano-Avila has four outstanding arrest warrants and nine failures to appears. In his most recent arrest in May 2026, Manzano-Avila used an identification document with a false name and date of birth. The Court is less concerned that Manzano-Avila will flee the District than that he will evade supervision within it.

In addition, although the weight of the evidence is the least important factor, it favors detention. Manzano-Avila was found unlawfully present in the United States after his removal in 2007. Manzano-Avila does not challenge the validity of the underlying removal order, which forms the basis for his offense.

The third factor, Manzano's history and characteristics, also favors detention. *See* 18 U.S.C. § 3142(g)(3). In evaluating this factor, the Court considers the facts described in the Pretrial Services Report and Supplemental Pretrial Report, Dkts. 4, 12. Manzano-Avila argues that he has strong ties to the United States, asserting that he has lived here at least half of his life. Dkt. 26 at 4. He requests release to the home of his mother, stepfather, and brother. Dkt. 23 at 13. The record reflects, however, that Manzano-Avila's relationship with his mother and stepfather has been unstable. In 2015, both his mother and stepfather filed two protection orders against him alleging domestic violence, three of which also protected his brother. *Id.* Although those orders expired more than a decade ago, his mother contacted law enforcement approximately six months ago to report that

ORDER - 7

Manzano-Avila had broken into her home and stolen an iPad.[2] *Id.*

Furthermore, Manzano-Avila's most recent arrest demonstrates that he is a clear danger to the community. The police report from that incident indicates that Manzano-Avila fled on foot from law enforcement and actively resisted being handcuffed, resulting in officers having to perform a controlled takedown.[3] Dkt. 23-4 at 4, 6. Manzano-Avila has also been the subject of multiple protection orders. Residence at the RRC requires active, voluntary participation and a willingness to follow rules. There is nothing in the record that suggests he can be relied upon to comply with the rules and requirements of the RRC.

Considering the record as a whole, the Court finds by clear and convincing evidence that Manzano-Avila poses a danger to others and to the community generally, and that no condition or combination of conditions will reasonably assure community safety.

The Court also finds by a preponderance of the evidence that no condition or combination of conditions will reasonably ensure his appearance as required.

Manzano-Avila's motion to revoke detention, Dkt. 17, is **DENIED**.

---

[2] Although Manzano-Avila objects to the allegations made by his mother in the police report, the Court does not rely on this evidence for the truth of the allegations. Rather, the Court considers the report only to the extent that it supports the conclusion that their relationship is unstable.

[3] Manzano-Avila requests that the Court not consider hearsay evidence offered through police reports. However, he has not asserted that the information contained in those reports regarding his arrest is incorrect. *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986) ("Without a proffer from [defendant] that the government's proffered information was incorrect, the magistrate was not required to allow [defendant] to cross-examine the investigators and police officers.").

ORDER - 8

The Court finds the matter can be decided on the pleadings; the hearing scheduled on this motion is therefore stricken.

Dated this 10th day of July, 2026.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 9